UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RAHEEM PETERKIN, <br><br> Plaintiff, <br><br> v. <br><br> VICTOR HILL, individually, <br> CORRECTHEALTH CLAYTON, LLC, <br><br> Defendants. | Civil Action No.: <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

1. When Raheem Peterkin entered the Clayton County Jail, Sheriff Victor Hill immediately ordered Peterkin be bound in a restraint chair. Peterkin did not act threateningly to himself or others—which was a required precondition to use of the chair. Hill watched as Peterkin was put into the chair in a way that was obviously improper and especially painful, leading to intense pain and permanent scarring. Peterkin was restrained for four hours or longer. He was denied the ability to use the restroom and was forced to urinate on himself.

2. All the while, CorrectHealth staff stood by and did nothing when they had full authority to act to protect Peterkin.

3. Victor Hill was convicted of willfully violating Peterkin's constitutional rights, in contravention of 18 U.S.C. § 242, and causing him physical pain and bodily injury. *See United States v. Hill*, 1:21-cr-143-ELR-CCB (N.D. Ga. October 26, 2022); *aff'd*, No. 23-10934, 2024 WL 1846733 (11th Cir. Apr. 29, 2024).

4. The operative indictment, Doc. 49, the jury's verdict finding Hill guilty of violating Peterkin's rights, Doc. 94, the judgment, Doc. 113, and the Eleventh Circuit's affirmance are attached hereto.

## JURISDICTION AND VENUE

5. This is a civil and constitutional rights action arising under 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction of pendant state law claims under 28 U.S.C. §1337.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division.

7. This action is timely pursuant to O.C.G.A. § 9-3-99, which tolls the statute of limitation for victims of crime, and the October 26, 2022 date of Victor Hill's conviction. *See Meyer v. Gwinnett Cnty.*, 636 F. App'x 487, 489

(11th Cir. 2016) ("When applying state limitations periods to § 1983 claims, we also apply any relevant state tolling provisions." (citing *Wilson v. Garcia*, 471 U.S. 261, 269 (1985)); *see also Harrison v. McAfee*, 788 S.E.2d 872, 878–79 (Ga. Ct. App. 2016) ("Based on the plain language of OCGA § 9–3–99, we hold that the statute applies regardless of whether the defendant in the case has been accused of committing the crime from which the cause of action arises.").

## PARTIES

8. Plaintiff Raheem Peterkin is a United States citizen.

9. Defendant Victor Hill (hereinafter "Hill" Defendant Hill" and "Sheriff Hill") was at the time of the events complained of herein the Sheriff of Clayton County, Georgia. Defendant Hill is sued in his individual capacity. At all times relevant to this complaint, Hill acted under the color of law.

10. Defendant CorrectHealth Clayton, LLC (hereinafter referred to as CorrectHealth) is a Georgia limited liability company.

## FACTS

11. On December 8, 2019, Raheem Peterkin was arrested by the Clayton County Police Department.

12. During his arrest, Peterkin did not act violently or make any threats towards himself, others, or property.

13. After his arrest, Peterkin was transported to the Clayton County Jail.

14. During transport to the Clayton County Jail, Peterkin did not act violently or make any threats toward himself, others, or property.

15. Immediately upon arriving at the Clayton County Jail, Peterkin was ushered into the intake area.

16. Within a matter of minutes, Hill entered the intake area, and the inmates were ordered to stand facing the wall.

17. While standing facing the wall, Hill told Peterkin he should not have been arrested and instead should have been executed.

18. Hill told Peterkin that if he was there for Peterkin's arrest he would've "riddled [Peterkin's] ass with bullets."

19. There was no need to use force to arrest Peterkin and none was used.

20. Immediately after that comment, Hill ordered Peterkin to be restrained in a restraint chair.

21. Hill said, "Put that bitch in the chair."

22. The officers complied with Hill's orders and Peterkin willingly submitted to deputies who bound him in the restraint chair.

23. Common sense and Hill's own policy stated that the chair was a use of force, could not be used for punishment, and could only be used in emergencies when other tactics had failed.

24. Hill willfully disregarded common sense and his own policy.

25. Policy also required that justification for the use of the chair must be documented in a use of force report.

26. There was no documentation for Peterkin's restraint in the chair because there was no plausible justification.

27. Hill destroyed evidence once the FBI began investigating his misuse of the chair.

28. At no point between Peterkin's arrest and confinement in the restraint chair did Peterkin exhibit any behavior that could reasonably be considered violent, aggressive, or threatening towards himself, others, or property.

29. Peterkin was not examined by any medical professional (including any CorrectHealth staff) before being confined in the restraint chair.

30. Peterkin was not allowed to use the bathroom before being confined in the restraint chair.

31. Both CorrectHealth medical staff and Hill failed to provide Peterkin the opportunity to use the bathroom before being placed in the restraint chair.

32. Hill and CorrectHealth staff observed that Peterkin was improperly placed in the chair in a way that would obviously significantly increase the pain he experienced.

33. Peterkin was placed into handcuffs behind his back, which were then purposefully tightened to hurt him.

34. No handcuffs—especially not handcuffs behind the back—are permitted to be used in connection with the chair.

35. Peterkin alerted CorrectHealth medical staff that the restraint chair was causing him physical and emotional pain.

36. Peterkin's blood pressure rose significantly during his time in the restraint chair.

37. Peterkin was bound in the restraint chair for four or more hours.

38. Because of his time in the restraint chair, Peterkin sustained physical injuries including significant wrist lacerations that have left scarring on both of his wrists.

39. CorrectHealth medical staff were aware of Peterkin's physical pain and injuries because of his confinement in the restraint chair, yet they did nothing.

40. According to Hill and a CorrectHealth witness at Hill's trial, if CorrectHealth staff observed improper use of the chair, they were required to take corrective action.

41. During his time in the restraint chair, Peterkin was not allowed to use the bathroom and was ultimately forced to urinate on himself while bound and shackled to the chair.

42. CorrectHealth medical staff were aware that Peterkin needed to use the bathroom but failed to provide him any opportunity to do so.

43. CorrectHealth's unwritten policy and widespread custom and practice was to stand by and do nothing to protect the people Hill ordered into the restraint chair no matter how egregious the circumstances.

44. Hill was convicted of willfully misusing the chair six different times.

45. In each of those instances, CorrectHealth staff observed the misuse of the chair.

46. In each of those instances, CorrectHealth staff was empowered, obligated, and able to intervene.

47. In none of those instances did CorrectHealth do anything about the misuse of the chair.

48. Defendants' use of the restraint chair served no genuine penological purpose.

49. Defendants' use of the restraint chair was the proximate cause of Plaintiff's physical pain, bodily injury, and emotional suffering.

## COUNT I
### *Unlawful Force*
### *under 42 U.S.C. § 1983 and the Fourteenth Amendment*
### *(Against all Defendants)*

50. Plaintiff was subjected to excessive force in violation of the Fourteenth Amendment.

51. Hill acted under the color of law when he subjected Plaintiff to excessive force.

52. Hill's conduct was objectively unreasonable.

53. Hill's conduct served no valid penological purpose.

54. Hill's conduct caused Plaintiff's injuries.

55. CorrectHealth's policy, custom, and practice was to turn a blind eye to Hill's misuse of the chair.

56. CorrectHealth had the ability and obligation to intervene in response to Hill's systemic misuse of the chair as a torture device, but failed to do so.

## COUNT II
*Battery*
*(Against Hill)*

57. Hill unlawfully caused Plaintiff's body to be touched in a harmful and offensive manner.

58. Plaintiff was injured as a result of Defendant Hill's actions.

59. Hill acted with actual malice, such that he is not entitled to official immunity.

## COUNT III
*State Law Breach of Duty*
*(Against All Defendants)*

60. Defendants breached a wide range of legal duties owed to Plaintiff and to the public at large, including duties imposed by policy, training, the Georgia Constitution, and state law.

61. Plaintiff was injured as a result of Defendants' actions.

62. Hill breached ministerial duties provided in written policy, including failing to write reports, failing to maintain logs, and improperly restraining Peterkin into the chair with his arms handcuffed behind his back.

63. Hill acted with actual malice, such that he is not entitled to official immunity.

64. CorrectHealth is not entitled to any immunity.

## COUNT IV
### *Negligence*
### *(Against CorrectHealth)*

65. CorrectHealth owed a duty to Plaintiff to make sure he avoided injury while he was bound in the restraint chair and that the written policy was followed.

66. CorrectHealth personnel directly observed Plaintiff, saw the cuts to his wrists, heard his complaints, and disregarded his requests to use the bathroom in a minimally dignified way.

67. CorrectHealth personnel failed to exercise the requisite standard of care by failing to intervene to protect Plaintiff during his time in the restraint chair.

68. CorrectHealth personnel knew that Plaintiff should not be restrained pursuant to policy, but no one intervened.

69. Alternatively, CorrectHealth failed to exercise the requisite standard of care by failing to alert others about Plaintiff's injuries that were being caused by the restraint chair.

70. CorrectHealth is vicariously liable for the actions of its agents for state law negligence claims.

71. CorrectHealth's actions were a proximate and actual cause of Plaintiff's injuries.

### COUNT V
### *Punitive Damages*
### *(Against All Defendants)*

72. Defendants acted with conscious indifference or reckless disregard for the consequences of their actions, such that an award of punitive damages is authorized under state and federal law.

### COUNT VI
### *Attorney Fees*
### *(Against All Defendants)*

73. Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense through the events giving rise to this action as well as in Defendants' course of conduct in this litigation.

74. Plaintiff requests reasonable attorney fees and expenses associated with this litigation, and such fees and expenses are appropriate under O.C.G.A. § 13-6-11.

75. Plaintiff is also entitled to attorney fees under 42 U.S.C. § 1988.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests this Court:

a) Hold a trial by jury on all issues so triable;

b) Award nominal, compensatory, special, and punitive damages to Plaintiff against Defendants in an amount to be proven at trial;

c) Award Plaintiff attorney fees under 42 U.S.C. § 1988 and state law;

d) Tax all costs of this action against Defendants; and

e) Award any additional or alternative legal or equitable relief that is just and appropriate.

Respectfully submitted, this 3rd day of May, 2024.

*/s/Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002
Samantha Funt
Georgia Bar No. 943783

MITCHELL SHAPIRO GREENAMYRE & FUNT, LLP
881 Piedmont Avenue
Atlanta, Georgia 30309
Phone: 404-812-4747
Fax: 404-812-4740
zack@mitchellshapiro.com
sam@mitchellshapiro.com