**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RAHEEM PETERKIN,

    Plaintiff,

       v.

VICTOR HILL, individually,
CORRECTHEALTH CLAYTON, LLC,

    Defendants.

Civil Action No.:
1:24-cv-01945-ELR

**<u>DEFENDANT CORRECTHEALTH CLAYTON, LLC'S BRIEF IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW Defendant CORRECTHEALTH CLAYTON, LLC (hereinafter "CHC") and files this brief in support of its Motion for Summary Judgment, showing this honorable Court as follows:

## I.    FACTS

Plaintiff brings this federal civil rights lawsuit against CHC alleging CHC was negligent and deliberately indifferent to Plaintiff's needs by failing to intervene when security staff, under the direction of  Sheriff Victor Hill, placed him in a restraint chair. (Doc. 1, ¶¶ 20-23.)  According to the Complaint, CHC had a duty to intervene and prevent Sheriff Hill's misuse of the chair, however, instead, CHC's alleged policy and custom was to "turn a blind eye" to Hill's  misuse of the chair. (<u>Id</u>. ¶¶ 55-56.) Plaintiff goes on to allege CorrectHealth Clayton, LLC is vicariously

liable under state law because its personnel violated the standard of care by negligently failing to intervene to protect the Plaintiff from injury and alert others about improper use of the restraint chair. (Id. ¶¶ 65-71.) In sum, Plaintiff claims that as a result of CorrectHealth Clayton, LLC's failure to intervene in the restraint process, he suffered high blood pressure, sustained scratches and pain to his wrists, pain in his shoulders, urinated on himself, and suffered emotional distress in the form of PTSD. (Id. ¶¶ 65-71; Ex. 1, Plaintiff's Resp. to Def. CorrectHealth Clayton's First Interrogatories, No. 28.).

## II.   Argument and Citation of Authority.

Summary judgment is proper when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law.  Fed. R.Civ. P. 56(c).  Summary judgment is not discretionary.  Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). Rather, "[t]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (emphasis added). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Id. at 327.

The moving party bears the initial burden of showing there is no genuine issue of fact, but that "showing" does not require the movant to produce evidence negating its opponent's claims. Id. at 325. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id.  Speculation or conjecture from a party cannot create a genuine issue of material fact. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "[T]he Court need not accept as true legal conclusions or unwarranted factual inferences." Hennington v. Greenpoint Mortg. Funding, Inc., No. 1:09-CV-00962-RWS, 2009 U.S. Dist. LEXIS 41343, at *5–6 (N.D. Ga. May 15, 2009) (quoting Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir. 2006)). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (per curiam).

**A. No vicarious liability under 42 U.S.C. § 1983.**

"When a private entity contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality." Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011) (internal citations omitted); Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). It is axiomatic that

municipalities cannot be held liable for constitutional torts under § 1983 on theories of *respondeat superior* or vicarious liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). An entity "does not incur § 1983 liability for injuries caused solely by its employees." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

Plaintiff alleges in his Complaint that CHC had knowledge of Hill's improper use of the restraint chair through its "medical staff". (Doc. 1 at ¶¶ 29, 31, 32, 35, 39, 40, 42, 45, 46.) Plaintiff goes on to claim CHC had an unwritten policy and widespread custom and practice to "stand by and do nothing" to protect inmates who were ordered into the restraint chair by Hill and that as a result, CHC proximately caused Mr. Peterkin's injuries. (Doc.1 at ¶¶ 43-49.)

As an initial matter, CHC is the entity that contracted with Clayton County Sheriff's Office to provide medical services at the Clayton County Jail during the time frame at issue. (Ex. 2, Health Services Agreement and Renewal).  However, CHC did not employ any of the medical providers who worked at the Clayton County Jail on December 8, 2019 or at any other time relevant to the events in this case. (Id. at ¶ 2.6;  Ex. 3, Def. CHC's Resp. to Pltf's First Interrogatories, No. 3.) Rather, an independent contractor, CorrectHealth, LLC employed the most of the

medical providers who cared for inmates at the Clayton County Jail in 2019.[1]  No

independent contractors, including CorrectHealth, LLC are parties to this case, nor

are any individual medical providers.

To the extent Plaintiff asserts that CHC was deliberately indifferent to Mr.

Peterkin's needs because it allegedly had knowledge of Hill's improper use of the

restraint process through its "medical staff," such claims are not sufficient to

establish liability against CHC as an entity. There is no *respondeat superior* liability

for 42 U.S.C. § 1983 claims. CHC did not employ any of the medical staff at the

Clayton County Jail, and Plaintiffs did not include any medical staff member or

independent contractor as a Defendant. As a result, CHC is entitled to summary

judgment on these claims.

**B.    Plaintiff cannot prove that an official or unofficial policy or custom of was unconstitutional.**

"To establish §1983 liability, [Plaintiff] must demonstrate a policy, custom,

or practice of the prison medical care provider which was the moving force behind

the deprivation of the plaintiff's constitutional rights." Boyd v. Corizon, Inc., No.

2:13CV354-WHA, 2015 U.S. Dist. LEXIS 75586, at *14–15 (M.D. Ala. June 11,

2015). "A policy is a decision that is officially adopted by the municipality, or

created by an official of such rank that he or she could be said to be acting on behalf

---

[1] CorrectHealth LLC employed some of the contracted providers while others were employed by staffing agencies who contracted with CorrectHealth LLC to provide nursing staff.

of the municipality." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (emphasis added). A custom is "a practice that is so settled and permanent that it takes on the force of the law." <u>Id</u>. "Random acts or isolated incidents are insufficient to establish a custom or policy." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1290 (11th Cir. 2004) (quoting <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir. 1986). Plaintiff has not come forward with any evidence to show that CHC's official or unofficial policies were unconstitutional.

### 1. Plaintiff has not shown CHC had an "official" policy that was unconstitutional.

A procedure or policy is facially unconstitutional only "when no set of circumstances exists under which the policy would be valid," and where there is "an excessive risk of serious harm to inmates just because the policy exists." Lynch v. Jackson, 478 F. App'x 613, 617 (11th Cir. 2012). CHC has a formal "Restraint and Seclusion" policy that governs the monitoring of restrained inmates' medical condition. (Ex. 4, Policy G-01.0 "Restraint and Seclusion".) The policy specifically addresses custody ordered restraints and is expressly based on the National Commission for Correctional Healthcare's ("NCCHC") model policies, which Plaintiff's expert agrees are the standards for correctional medical care.[2] (Id.; Ex. 5, Lambert Dep. pp. 29-30, p. 94, ll. 3-5.)

---

[2]   NCCHC standards are actually "best practices," that very few facilities apply for NCCHC accreditation, and that fewer receive accreditation. <u>Hughes v. Judd</u>, 108 F. Supp. 3d

Plaintiff has put no evidence into the record to show that this policy or any other CHC policies are facially unconstitutional.  There is no policy or protocol found CHC's policy manual that instructed medical staff not to intervene when inmates were placed in custodial restraints, nor is there evidence of any sort of modification of a policy or protocol related to monitoring inmates in custodial restraints placed at the order of Victor Hill. Though Plaintiff's expert, Johnnie Lambert agreed with counsel for Plaintiff that a "reasonable policy" would include specific time intervals for the nurses to evaluate inmates in custodial restraints, she does not claim there are no set of circumstances that exist under which the policy would be valid or that there is an excessive risk of harm to inmates just because the policy exists. (Ex. 5 Lambert Dep. p. 95, ll. 6-11.) Thus, there is no evidence of any unconstitutional official policy or custom that resulted in deprivation of Mr. Peterkin's constitutional rights and summary judgment should be granted.

> **2. Plaintiff cannot prove that CHC had an unofficial policy or custom that was enacted with deliberate intent or that was so widespread that CHC should have been on notice of constitutional violations.**

Plaintiff relies on Victor Hill's six convictions involving his improper use of the restraint chair to infer that somehow CHC had an unwritten policy or widespread

---

1167, 1250-51 (M.D. Fla. 2015); *See also,* Riker v. Gibbons, No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841, at *11 (D. Nev. Oct. 27, 2010) ("the National Commission on Correctional Heath Care (NCCHC)…is widely-accepted as a model for **best-practices** in correctional health care.") (Emphasis added.)

custom to "stand by and do nothing" when Hill and his deputies used the restraint chair improperly. (*See generally*, Doc. 1 including attachments). However, this is patently insufficient to show a widespread violation necessary to impute liability to CHC. First, CHC was not convicted of any constitutional violations. Further, though it is required to show deliberate indifference, Plaintiff has put no evidence in the record to show CHC was aware Hill and his deputies somehow misused the chair on inmates or that CHC or any medical staff stood by and did nothing with regard to those six inmates, including the Plaintiff. Plaintiff has not deposed a CHC officer or supervisor to show CHC was somehow aware of Hill's misuse of the chair, nor can plaintiff point to any medical provider testimony that suggests the medical staff were aware of Hill's misuse of the chair.

To the contrary, the only evidence in the record shows that the medical staff actually did intervene and provide care and treatment to Mr. Peterkin while he was restrained. In Mr. Peterkin's deposition, he claims that while in the restraint chair, the doctor came to see him, checked his heartbeat, and asked about his medications while a nurse took his vital signs and provided blood pressure medication. (Ex. 6, Peterkin Dep. p. 61, ll. 12 – 62, ll. 25). The medical record further shows Mr. Peterkin was provided with an initial medical assessment on December 8, 2019, from 10:20 – 10:23, received blood pressure medication and aspirin from the nurse around 16:28, and that the nurse specifically asked the officers to reposition Mr. Peterkin's

hands so that they were not uncomfortably restrained behind him.  (Ex. 7, Medical Records Bates Nos. CP_CorrectHealth_001 – CP_CorrectHealth_015).  Plaintiff's expert even acknowledged that these interventions were provided.  (Ex. 5, Lambert Dep.  pp. 52-57.)  Plaintiff's claim that CHC had an unofficial policy or custom to "stand by and do nothing" was never proven by evidence, and it remains a mere unproven allegation that cannot defeat CHC's motion for summary judgment.  On the other hand, even if a hypothetical "stand by and do nothing" policy purportedly existed generally – which it did not – that hypothetical policy was not followed by CHC in the instance of Mr. Peterkin.  Instead, while he was in the restraint chair for security reasons as determined by Sheriff Hill, Peterkin was examined by a doctor and a nurse, including repositioning his handcuffed hands.  By Plaintiff's own deposition testimony, the medical staff did not stand by and do nothing.  Thus, even if such a purported policy did exist, it was not a moving force of any actual claim Plaintiff has made in this case.  As a result, summary judgment in favor of CHC is required.

### C. State law medical malpractice claims.

#### 1.  No vicarious liability against CorrectHealth Clayton, LLC.

Plaintiff cannot recover against CHC for state medical malpractice claims under a theory of *respondeat superior* because CorrectHealth, LLC, an independent contractor employed the medical staff at issue, not CHC.  When Plaintiffs sue the

wrong corporate entity, an  actual change in parties is required. <u>Foskey v. Vidalia</u> <u>City School</u>, 258 Ga. App. 298, 300, 574 S.E.2d. 367 (2002). CorrectHealth, LLC is not a Defendant in this case.  Pursuant to the contract between CHC and the Clayton County Sheriff's office, the medical providers at issue were independent contractors and not employees or agents of CHC.   (Ex. 2, Health Services Agreement and Renewal).  For these reasons, summary judgment should be granted as to CHC.

### 2. Plaintiffs cannot prove medical causation for acts or omissions of the medical staff.

To the extent Plaintiff's Complaint brings claims under Georgia state law for medical malpractice, the "law of Georgia as it pertains to medical malpractice actions is applicable." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1295-96, 18 Fla. L. Weekly Fed. C 92 (11th Cir. 2004), citing <u>Smith v. Am. Transitional Hosps., Inc.</u>, 330 F. Supp. 2d 1358, 1361 (S.D. Ga. 2004).  To create a jury issue in a medical malpractice action in Georgia, a plaintiff must present expert medical testimony on two issues: breach of the applicable standard of care and proximate causation. <u>Johns</u> <u>v. Jarrard</u>, 927 F.2d 551, 557 (11th Cir. 1991) (directed verdict for defendant where plaintiff failed to produce expert testimony on causation); *see also* <u>Beasley v.</u> <u>Northside Hosp., Inc.</u>, 289 Ga. App. 685, 658 S.E.2d 233, 236 (Ga. Ct. App. 2008). Where a plaintiff fails to present expert medical testimony establishing either a violation of the requisite standard of care or causation between the alleged actions

and his alleged injury, the claim must fail. Chaney v. United States, 658 F. App'x 984, 987 n.2 (11th Cir. 2016) (granting summary judgment where plaintiff failed to offer expert causation testimony). Georgia law is clear that medical causation must come from expert testimony and must be proven by a "reasonable medical probability or reasonable medical certainty." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304, (11th Cir. 2009) (quoting Zwiren v. Thompson, 276 Ga. 498, 578 S.E.2d 862, 867 (2003) (testimony to a "medical possibility" is insufficient for liability under Georgia law). The expert testimony must provide a causal connection that is "more than a mere chance or speculation." Id. at 1304 (quoting Anthony v. Chambless, 231 Ga. App. 657, 500 S.E.2d 402, 404 (Ga. Ct. App. 1998)). Plaintiffs do not offer competent expert medical testimony connecting any action or omission of the medical staff to Mr. Peterkin's alleged injuries.

The only expert Plaintiff has offered is nurse Johnny Lambert, who claims she has trained nurses on restraint policies and procedures during the five years prior to the events at issue, yet has not cared for an inmate in custodial restraints since 2003. (Ex. 5, Lambert Dep. pp. 14-15.) As a nurse, Ms. Lambert agreed she was not qualified to testify as to the standard of care for physicians, therefore any criticisms against Dr. Clopton, the physician that evaluated Mr. Peterkin while he was restrained, are inadmissible. (Ex. 5, Lambert Dep. pp. 32 ll. 6 – 33 ll.6, O.C.G.A. § 9-11-9.1.)    Likewise, as a nurse, Ms. Lambert is not qualified to testify as to the

- 11 -

cause of Mr. Peterkin's alleged injuries including his elevated blood pressure, alleged wrist lacerations and pain, shoulder pain, urinating on himself, and PTSD as diagnosing such injuries and the cause of those injuries is outside of her scope of practice. Chybicki v. Coffee Reg'l Med. Ctr., 361 Ga. App. 654, 664-65, 865 S.E.2d 259, 266 (2021)("it is axiomatic that no expert can testify outside the limits of his area of expertise, and Georgia law considers opinions about medical diagnoses to fall outside the limits of the expertise of a non-physician." (*internal citations omitted*). To date, Plaintiffs have not come forward with any facts or evidence to show Ms. Lambert is qualified to opine as to the cause of Mr. Peterkin's injuries. Based on her deposition testimony and her CV, she does not have any experience diagnosing conditions and injuries such as elevated blood pressure, wrist pain, shoulder pain, incontinence, or PTSD. (Ex. 5, Lambert Dep.; Ex. 8, Lambert CV.) As gatekeeper of admissible expert testimony, this Court should exclude Ms. Lambert's causation opinions.

Moreover, even if Ms. Lambert was qualified to opine on causation, she agreed that she did not know if being placed in the restraint chair caused Mr. Peterkin's blood pressure to be high. (Ex. 5, Lambert Dep. p. 60, ll. 2-19.) She agreed that there was no clinical reason why the nurse should have to tell the officer that Mr. Peterkin needed to use the restroom, and the nurses did not have a duty to remind the officers of the need for restroom breaks absent urological problems. (Ex. 5,

Lambert Dep. p. 85, ll. 7-21.) She went on to agree that even if the medical staff did everything they were supposed to do to meet the standard of care, Mr. Peterkin very likely could have had the same outcome because the officers and custodial staff had the keys and the nurses do not have the ability to release the restraints. (Ex. 5, Lambert Dep. pp. 96, ll. 22 – 97, ll. 25).  Finally, Ms. Lambert did not offer any opinions about the cause of Mr. Peterkin's PTSD, nor does she intend to. (Ex. 5, Lambert Dep. p. 65, ll. 2-6).  Because Plaintiff has not come forward with competent expert testimony to support causation, summary judgment as to CorrectHealth Clayton, LLC should be granted.

## CONCLUSION

For the foregoing reasons, CorrectHealth Clayton, LLC's MOTION FOR SUMMARY JUDGMENT should be GRANTED.

This 8th day of September, 2025.

Respectfully submitted,

/s/ Chelsea M. Murphy
Thomas E. Lavender III
Georgia Bar No. 439389
Chelsea N. Murphy
Georgia Bar No. 919109
Attorneys for CorrectHealth Clayton, LLC

LAVENDER HOFFMAN EMERY, LLC
750 Hammond Drive
Building 2, Suite 200
Atlanta, GA 30328
(404) 400-4500 (phone and fax)
tlavender@lhefirm.com
cmurphy@lhefirm.com

- 13 -

## <u>CERTIFICATE OF COMPLIANCE</u>

Under the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1.C. The foregoing was prepared on computer using Times New Roman font (14 point).

This 8th day of September, 2025.

Respectfully submitted,

<u>/s/ Chelsea M. Murphy</u>
Thomas E. Lavender III
Georgia Bar No. 439389
Chelsea N. Murphy
Georgia Bar No. 919109
*Attorneys for CorrectHealth Clayton, LLC*

LAVENDER HOFFMAN EMERY, LLC
750 Hammond Drive
Building 2, Suite 200
Atlanta, GA 30328
(404) 400-4500 (phone and fax)
tlavender@lhefirm.com
cmurphy@lhefirm.com

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY THAT I have this day served a copy of the within and foregoing **Defendant CorrectHealth Clayton, LLC's Brief in Support of Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system which will automatically serve an electronic copy of same upon the following counsel of record:

Zach Greenamyre, Esq.
Samantha Jill Funt, Esq.
Andrew Cantor, Esq.
Mitchell Shapiro Greenamyer
& Funt LLP
881 Piedmont Avenue
Atlanta, Georgia 30309
zach@mitchellshapiro.com
sam@mitchellshapiro.com
andrew@mitchellshapiro.com

Edward Greenblat
Michael D. Hoffer
Karen E. Woodard
Cruser, Mitchell. Novitz, Sanchez,
Gaston & Zimet, LLP
275 Scientific Drive, Suite 2000
Peachtree Corners, GA 30092
egreenblat@cmlawfirm.com
mhoffer@cmlawfirm.com
kwoodward@cmlawfirm.com

Victor Hill
6500 Halcyon Way, Apt. 363
Alpharetta, GA 30005
Keith126217@yahoo.com

This 8th day of September, 2025.

LAVENDER HOFFMAN EMERY, LLC
750 Hammond Drive
Building 2, Suite 200
Atlanta, GA 30328
(404) 400-4500 (phone and fax)
tlavender@lhefirm.com
cmurphy@lhefirm.com

Respectfully submitted,

/s/ Chelsea M. Murphy
Thomas E. Lavender III
Georgia Bar No. 439389
Chelsea N. Murphy
Georgia Bar No. 919109
*Attorneys for CorrectHealth Clayton, LLC*

- 15 -