# EXHIBIT

# 4

| CORRECTHEALTH | CLAYTON COUNTY JAIL POLICY & PROCEDURE | | |
|---|---|---|---|
| **RESTRAINT AND SECLUSION** | *Number* | CLTJ-G-01.0 | |
| | *Original* | January 2017 | |
| | *Previous* | November 2017 | |
| Section | G – Medical-Legal Issues | *Current* | January 2019 |
| References | NCCHC JAIL  2018: J-G-01 (E); ACA 2008: 4-ALDF-2B-02; 4-ALDF-2B-03; 4-ALDF-4D-21. | | |

**POLICY:**   Clinically or custody ordered restraints are used when necessary and are monitored by the health staff so the inmate(s) is not harmed. *Clinically-ordered restraints and therapeutic seclusion are only ordered for patients exhibiting behavior dangerous to self or others as a result of medical or mental illness.*

**PROCEDURE:**

1.  **Clinically Ordered Restraint and Seclusion:**
    General guidelines for clinically-ordered restraints or seclusion for medical or mental health conditions include the following:

    a.  Restraints and therapeutic seclusion will be used only when the safety and welfare of an inmate cannot be protected by less restrictive means.

    b.  Restraints and therapeutic seclusion will not to be used for punishment and will begin with the least restrictive procedure possible.  Each lessor restrictive restraint or seclusion will be documented prior to escalating.

    c.  Restraints may be ordered by a physician or other qualified healthcare professional, as permitted by law, but shall only be applied and removed by trained correctional personnel.

    d.  The type of restraints used in the Facility will be comparable to community restraints, such as fleece-lined leather, rubber or canvas hand and leg restraints; 2-point and 4-point restraints; and restraint chairs and wraps.  Metal and hard plastic devices, such as handcuffs or leg shackles, will not be used for clinically-ordered restraints.

    e.  Patients will not be restrained in a manner that would jeopardize their health.

    f.  Patients will not be restrained in unnatural positions, such as hog-tied, face-down or spread-eagle.

    g.  Every effort will be made to minimize the length of time that an inmate is kept in clinically-ordered restraints or therapeutic seclusion.

2.  A provider order must be obtained prior to initiating restraints, except in emergency situations.

    a.  The order may be written, verbal or via telephone.

    b.  The on-site provider must evaluate the patient to determine the need for restraint.

    c.  If a provider is not on-site, staff will contact the on-call provider with information sufficient for the justification of restraints.

    d.  If restraints are initiated in an emergency situation, the staff will inform the provider as soon as possible to obtain orders.

    e.  The provider order must include:

        1.  The type of restraint to be used;

        2.  The purpose and clinical justification for the type of restraint used;

3. The length of time for the use of restraints, not to exceed four (4) hours or in compliance with State requirements; and

4. Justification for continuation of restraints after each 4-hour period based upon observation of the patient's behavior and evaluation of their clinical condition.

3. Health status monitoring will be documented on the Restraint Flow Sheet to include visual checks by health trained personnel or health care staff at 15 minute intervals and a more in-depth evaluation every two hours.

   a. The two hour assessment will include the evaluation of airway and breathing status; the circulation, movement and sensation status of each extremity restrained; and the patient's mental and psychological status.  Food, water and toileting will be offered at this time.  Each restrained extremity will be released and exercised for at least 10 minutes at the two hour evaluation.

   b. When the patient is asleep, it will not be necessary to wake the patient to complete the two hour evaluation; however, during sleep, the patient's breathing and airway status will be documented every 15 minutes.

4. The use of force to apply clinically-ordered restraints will be authorized by a Provider if necessary.  Only the amount of force that is absolutely necessary will be used in the application of restraints.

5. The concomitant use of psychotropic medications and physical restraints necessitates constant observation of the patient by a healthcare staff member.  As soon as the medication has achieved a therapeutic effect, the restraints will be removed.

6. Therapeutic seclusion may be ordered by a provider to assist a patient in regaining control of behavior.

   a. Patients requiring therapeutic seclusion will ideally be placed in the Infirmary or in a room designed to safely limit a patient's risk, such as a padded cell or room with limited or absent furniture and fixtures.

   b. The therapeutic seclusion orders will include:

      1. Clinical justification for initial placement in, and continuation of, therapeutic seclusion

      2. The maximum period of time allowed in therapeutic seclusion (not to exceed 24 hours) until a provider must evaluate the patient's condition to determine the need for continued seclusion

7. Custody Ordered Restraints:

   Healthcare staff do not participate in the restraining or seclusion of inmates for disciplinary or administrative reasons; however, staff will:

   a. Review the health record for any contraindications or accommodations required and will advise the appropriate security staff of any pertinent information

   b. Monitor the health and safety of inmates placed in non-clinical restraints or seclusion on a regular basis at intervals agreed upon by the Facility Administrator, the Medical Director or Mental Health Services, and the Health Services Administrator.

   c. Immediately notify appropriate custody staff if the health of the restrained inmate is at risk.

8. If staff perceive improper use or application of non-clinical restraints, they will communicate their concerns immediately to the Health Services Administrator or designee.

    a. The Health Services Administrator will communicate this concern to the Medical Director and Facility Administrator.

    b. If the situation is unresolved, the Health Services Administrator will notify the Executive Medical Director or designee and the CorrectHealth Executive Committee immediately.

9. When a patient is under clinically-ordered restraint or seclusion, the Health Services Administrator or designee will provide a patient status report at least daily to the Facility Administrator and the Medical Director.

10. The Health Services Administrator will ensure that a documented sentinel event case review occurs with the Medical Director, Mental Health Team and other appropriate staff when clinically-ordered restraints or seclusion have been used.